

**IT IS ORDERED as set forth below:**

**Date: February 15, 2019**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **17-53391-PMB** |
| | : | |
| **JAY COSTA KELTER,** | : | CHAPTER 7 |
| f/k/a Ignatius J. Coster, III, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| **DANIEL M. McDERMOTT,** | : | |
| **UNITED STATES TRUSTEE,** | : | |
| | : | ADVERSARY PROCEEDING |
| Plaintiff, | : | |
| | : | NO. **17-5232** |
| v. | : | |
| | : | |
| **JAY COSTA KELTER,** | : | |
| f/k/a Ignatius J. Coster, III, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on (i) *Plaintiff's Motion for Summary Judgment*, filed by the United States Trustee, the Plaintiff named above (the "Plaintiff"), on May 31, 2018 (Docket No.

25)(the "Motion"), containing *Appendix A: Statement of Material Facts As To Which No Genuine Issue Exists To Be Tried* (the "Plaintiff's Statement of Material Facts") and attached Exhibits, (ii) *Memorandum in Support* with attached Exhibits (Docket No. 26)(the "Memorandum"), and (iii) *Notice of Filing Duplicate Original and Sealed Transcripts of 341 Meetings and Rule 2004 Examination of the Debtor* (Docket No. 27).

Previously, the Court entered an *Order (I) Denying Motion for Stay, (II) Overruling Objection to Proposed Scheduling Order and (III) Granting Debtor's Extension Motion* on June 12, 2018 (Docket No. 32)(the "Order"), in which the Court, among other things, allowed the Defendant-Chapter 7 Debtor (the "Debtor"), who is *pro se*, through and including August 31, 2018 to file his own motion for summary judgment and/or to respond to the Motion. To date, the Debtor has not responded to the Motion or filed a summary judgment motion. Instead, it appears that the Debtor chose to respond by causing a *Motion To Dismiss the Bankruptcy Case Without Prejudice* to be filed in his main bankruptcy case on August 31, 2018 (Main Case Docket No. 70)(the "Motion To Dismiss"), the due date for his response to the Motion.[1]

The Debtor filed this Chapter 7 case on February 24, 2017. The Plaintiff commenced this adversary proceeding (the "Adversary Proceeding") through the filing of a four-count *Complaint Objecting to Debtor's Discharge and for Other Relief* on August 30, 2017 (Docket No. 1)(the "Complaint").[2] In the Complaint, the Plaintiff alleges that the Debtor, a former investment adviser, converted over $1.6 million in funds from certain TD Ameritrade accounts he established for Jacquolyn Fitzgerald, whose portfolio he had managed at another firm. In addition, the Debtor allegedly traded on the account of another individual (Harry Klauber) who also incurred substantial

---

[1] The Motion to Dismiss has since been denied. *See* Main Case Docket No. 72.

[2] This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (J), and this Court has jurisdiction over the proceeding under 28 U.S.C. §§ 1334 and 157. *See also* Federal Rule of Bankruptcy Procedure 4004.

2

monetary losses. Further, the Debtor allegedly caused his step-mother, Aline Cassady, to incur losses and made payments to her prior to filing this bankruptcy case. Based on these allegations, along with other allegations of multiple material misstatements and omissions in his bankruptcy schedules, the Plaintiff objects to Debtor's discharge under 11 U.S.C. § 727(a)(5)(failure to satisfactorily explain loss or deficiency of assets transferred from Debtor's client's account to his own)(Count I), 11 U.S.C. § 727(a)(2)(A)(transfer, removal, destruction, mutilation or concealment of property with intent to hinder, delay, or defraud a creditor within a year of bankruptcy through various transfers of converted funds)(Count II), 11 U.S.C. § 727(a)(4)(A)(knowingly and fraudulently making a false oath or account in his bankruptcy statements and schedules)(Count III), and 11 U.S.C. § 727(a)(3)(concealing, destroying, mutilating, falsifying, or failing to keep or preserve financial records without justification)(Count IV).

The Debtor is subject to other pending litigation that is related to some of the allegations in this matter. First, he is the defendant in a criminal matter in the United States District Court for the Middle District of Tennessee (the "Tennessee District Court") styled *United States v. Jay Costa Kelter* (Case No. 3:17-cr-00208-1)(the "Criminal Proceeding").[3] The Debtor is also a defendant in a civil suit filed by Jacquolyn Fitzgerald in the Tennessee District Court on or about November 30, 2016 for $1.375 million, alleging fraud, breach of fiduciary duty, violation of Tennessee securities law, negligent misrepresentation, and conversion (*Jacquolyn Fitzgerald v. Jay Costa Kelter*, Case No.: 3:16-cv-3055)(the "Civil Suit").[4] In addition, the United States Securities and

---

[3] The Debtor previously stated in his *Motion for Stay and Objection to Proposed Scheduling Order* filed on January 10, 2018 (page 2)(Docket No. 12), that he presented himself to the Tennessee District Court for formal indictment on November 13, 2017, following entry of a Grand Jury Indictment (the "Indictment"). The Plaintiff states the Indictment was sought by the United States Attorney's Office in that district on twenty-two (22) counts of wire fraud, mail fraud, and securities fraud. *See Plaintiff's Response to Defendant's Motion for Stay and Objection to Proposed Scheduling Order* filed January 24, 2018 (paragraph 9)(Docket No. 13).

[4] Ms. Fitzgerald is listed in the Debtor's bankruptcy schedules as asserting a claim for $1.4 million based on the Civil Suit, and the Debtor has maintained that the Complaint herein restates those allegations.

Exchange Commission, Enforcement Division has filed an action against the Debtor in the Tennessee District Court alleging violations of the federal securities laws (Case No.: 3:17-cv-01441)(the "SEC Proceeding") arising from the same facts asserted in the Civil Suit and in the Complaint.

From a review of the dockets in these matters, it appears that the trial in the Criminal Proceeding, originally set for August of 2018, was rescheduled due to certain issues regarding the Debtor's availability and/or capacity to appear and mount a defense, which issues appear to have been resolved.[5] The SEC Proceeding has been stayed voluntarily pending resolution of the related Criminal Proceeding.[6] Based on the filing of the Motion To Dismiss in apparent response to the Motion, the Debtor seems to be actively monitoring this Adversary Proceeding and making decisions regarding his affairs in relation to this bankruptcy case.

*Standard of Review*

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56, applicable herein through Federal Rule of Bankruptcy Procedure 7056, if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden to demonstrate to the [Court] the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913,

---

[5] This appears to be the case, as the trial has now been reset to May 14, 2019. This conclusion is also supported by a review of the *Defendant's Motion (Application) for Immediate Release, and Reinstatement of Pretrial Release*, filed in the Criminal Proceeding on September 24, 2018 (Criminal Proceeding Docket No. 74), in which the Debtor makes a lengthy and detailed argument about the propriety of his release pending trial. Although that motion was denied without prejudice, it appears that an *Order Setting Conditions of Release* was entered on November 27, 2018. (*See* Criminal Proceeding Docket No. 97).

[6] The Civil Suit was administratively closed due to the filing of the Debtor's bankruptcy case. Status reports are filed monthly in that matter.

918 (11th Cir. 1993), *reh'g denied*, 16 F.3d 1233 (1994), citing *Taylor v. Espy,* 816 F.Supp. 1553, 1556 (N.D. Ga.1993)(citations omitted).

In deciding a motion for summary judgment, the court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Further, all reasonable doubts should be resolved in favor of the non-moving party, and "if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994), citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985). Presumptions or disputed inferences drawn from a limited factual record cannot support entry of summary judgment, and the court cannot choose between competing inferences. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).[7]

*Discussion*

In the Motion, the Plaintiff seeks summary judgment on all counts. Because the Court holds that relief is warranted on Count IV (Section 727(a)(3)(failure to keep adequate records)), Count I (Section 727(a)(5)(failure to explain loss of assets)), and Count III (Section 727(a)(4)(A) (knowingly and fraudulently making a false oath or account in statements and schedules)), and these holdings render the remaining Count moot, the Court does not reach the merits of Count II.

---

[7] Once the party moving for summary judgment has identified materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits on personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993). In actions under 11 U.S.C. § 727, the plaintiff bears the burden of proof. *See* Fed.R.Bankr.P. 4005.

5

*A.  11 U.S.C. § 727(a)(3)*

The Bankruptcy Code provides that a discharge shall be granted unless, among other exceptions, "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3).  A debtor has "an affirmative duty to maintain comprehensible records from which his financial condition or business transactions can be ascertained with a fair degree of accuracy." *Lioce v. Heinz (In re Heinz)*, 501 B.R. 746, 767 (Bankr. N.D. Ala. 2013), citing *Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907 (Bankr. S.D. Fla. 1998).

Because intent is not a required element for denial of discharge under Section 727(a)(3), the governing standard is reasonableness.  *St. Francis Cty. Farmers Ass'n v. Wright (In re Wright)*, 353 B.R. 627, 649 (Bankr. E.D. Ark. 2006).  Courts must look to the debtor's circumstances, since "[j]ustification for maintaining inadequate records 'depends…on what a normal, reasonable person would do under similar circumstances' based on the education, experience, and sophistication of the debtor, and other relevant factors regarding the debtor's business." *Storey v. Breedlove (In re Breedlove)*, 545 B.R. 359, 374 (Bankr. M.D. Ga. 2016)*,* quoting *In re Tipler*, 360 B.R. 333, 349 (Bankr. N.D. Fla. 2005).  A debtor must "'take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate.'" *Wright, supra*, 353 B.R. at 649 (citations omitted); *see also In re Wynn*, 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997)(court objectively measures adequacy of records as compared with those kept by reasonably prudent debtor of similar background, training, and business experience).

6

Further, when an individual "debtor owns and/or controls numerous business entities and engages in substantial financial transactions [with those entities], an absence of recorded information related to those entities and transactions establishes a *prima facie* case for an action to deny discharge under § 727(a)(3)." *Peters v. Michael (In re Michael)*, 433 B.R. 214, 222-23 (Bankr. N.D. Ohio 2010).[8]  Once a party objecting to discharge satisfies its burden of establishing that the debtor failed to keep and preserve financial records that prevented it from ascertaining the financial condition of the debtor, the burden shifts to the debtor to show that the inadequacy is warranted under all the circumstances. *In re Womble*, 108 F.App'x 993, 995 (5th Cir. 2004), citing *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003).  Any response to an asserted lack of records is reviewed under an objective test, so that it is unnecessary to show an intent to conceal and only that the absence of sufficient records is not justified. *See In re Pulos*, 168 B.R. 682, 689, 692 (Bankr. D. Minn. 1994).

Here, the record establishes that the Debtor failed to keep and maintain adequate records to allow his creditors to reasonably ascertain his true financial condition or fully review his business transactions.  The Debtor was a fifty (50%) percent owner of BEK Consulting Partners LLC ("BEK"), his only business enterprise.  BEK's revenue, received principally from the account of Ms. Fitzgerald, passed through to the Debtor and served as his sole source of income from 2014 to 2015.  BEK served as a partial source of income, along with funds from another client, for the

---

[8] *See also Protos v. Silver (In re Protos)*, 322 F.App'x 930 (11th Cir. 2009)(per curiam)(affirming the bankruptcy court's decision denying a debtor his discharge in part for failing to preserve his corporations' tax returns, despite having filed personal tax returns, as the corporate tax returns were necessary to determine the debtor's financial condition); *Buckeye Ret. Co., LLC v. Bishop (In re Bishop)*, 420 B.R. 841, 851 (Bankr. N.D. Ala. 2009)(explaining that "[i]f a plaintiff is able to show that corporate records are necessary to determine the debtor's financial condition, and the debtor has not kept or preserved such records, the debtor's discharge should be denied pursuant to § 727(a)(3)"); *Solis v. Asif (In re Asif)*, 455 B.R. 768, 792 (Bankr. D. Kan. 2011)("Some courts have specifically stated that corporate records are relevant to denial of discharge proceedings where the financial condition of the individual debtor and the corporation are closely connected." (internal quotations omitted)).

Debtor in 2016. Neither the Debtor nor BEK have filed income tax returns since 2013, and BEK did not generate K-1's after that date.[9] Further, BEK has no general ledger or other internal accounting tools. *See* Plaintiff's Statement of Material Facts, ¶¶ 11-22.[10] The Debtor has presented no evidence that he had other records or whether such records even exist. Such records are necessary to ascertain the Debtor's true financial condition, especially since it appears that BEK provided a substantial portion of the Debtor's income and livelihood. The Debtor's failure to keep such records frustrates any meaningful review of his financial circumstances or learning what happened to assets of the estate.

In terms of education, experience, and sophistication, the Debtor holds several college degrees and formerly held two (2) different licenses to sell securities and other types of financial investments. He has professionally managed high value trading accounts for nearly twenty (20) years, including at least one multi-million dollar account. Given this extensive background in the financial services industry, like other persons engaged in similar professional endeavors, it is reasonable to expect that the Debtor would have kept some records of his business and personal financial affairs, and no objectively discernable justification has been offered for his failure to do so. *See* Memorandum in Support, Statement of Facts, ¶ 54.

Section 727(a)(3) is intended to assure that the records of the Debtor and entities owned by, used by, or related to the Debtor are made available so that the Chapter 7 Trustee and creditors can use them to evaluate the Debtor's conduct prior to the filing of the bankruptcy case and identify

---

[9] Plaintiff's Statement of Material Facts, ¶¶ 11-22, 42-46. *See also* Answer, ¶ 46 (admitting allegation in Complaint with respect to failure to file tax returns). Copies of various bank statements have been produced.

[10] The Debtor has not controverted these allegations. More specifically, Local Rule BLR 7056-1(a)(2) provides that "[a]ll material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted." BLR 7056-1(a)(2)(N.D. Ga.). Although the Debtor filed an Answer to the Complaint denying some allegations, the Debtor has not responded to or directly refuted any of the allegations in the Plaintiff's Statement of Material Facts or disputed the accompanying documentary support offered by the Plaintiff.

or locate relevant assets or determine their disposition. No grounds have been offered to justify the lack of records of the Debtor or BEK. Based on the Debtor's failure in this regard, the Plaintiff has established a basis for relief in Count IV for denial of discharge under Section 727(a)(3).

### *B. 11 U.S.C. § 727(a)(5)*

Under Section 727(a)(5), a debtor's discharge may be denied when a debtor fails to offer a satisfactory explanation for a loss of assets. To make out a claim under Section 727(a)(5), the Plaintiff must first show a discrepancy between the property listed in the schedules and the assets shown in other financial documents, often ones in existence before the bankruptcy filing. At that point, the burden shifts to the Debtor to explain what happened to the property in question and why it is not reflected in the schedules, subject to the Court's review of credibility and whether such explanation is convincing. *See Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246 (11th Cir. 1995); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984).[11] In addition, "[v]ague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Chalik*, 748 F.2d at 619.

Here, the Plaintiff contends that the Debtor has testified that he came into possession of substantial funds from Ms. Fitzgerald, and that he no longer has control over these funds. These statements have not been disputed. For instance, the Debtor testified that these funds had been used for personal expenses, gifts, charitable contributions, and rent. *See* Transcript of Rule 2004 Examination, August 24, 2017 (140:1-14; 222:9-21), attached as Plaintiff's Exhibit 1 to the Motion (the "Rule 2004 Examination"); *see also* Transcript of Initial Section 341 Meeting, April 3, 2017 (17:4-10; 18:3-20), attached as Plaintiff's Exhibit 5 to the Motion (the "Section 341 Meeting"). Upon examination, the explanation offered by the Debtor as to the disposition of these funds is

---

[11] Like Section 727(a)(3), Section 727(a)(5) does not contain an intent requirement. *See In re Mihalatos*, 527 B.R. 55, 69 (Bankr. E.D. N.Y. 2015), citing *In re Cacioli*, 463 F.3d 229, 238 (2d Cir. 2006).

vague and indefinite. Even though he referenced certain bank statements, overall the explanation provided is not satisfactory and is lacking in sufficient detail, especially when considering the substantial amounts at issue. Compare *In re Palermo*, 370 B.R. 599, 619 (Bankr. S.D. N.Y. 2007). From the evidence presented, relief is also granted under Count I and the discharge is denied under Section 727(a)(5).

*C. 11 U.S.C. § 727(a)(4)*

Finally, the Plaintiff's allegations under Section 727(a)(4)(A) in Count III provide a sufficient basis for denying the Debtor a discharge in this case. Section 727(a)(4)(A) states that "[t]he court shall grant the debtor a discharge, unless...the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4). The purpose of this subsection is to assure that adequate facts are available to parties with an interest in the administration of a bankruptcy estate, without those parties having to investigate or undertake examinations to determine whether the information provided is true. Thus, "'[t]he entire thrust of an objection to discharge because of a false oath or account is to prevent knowing fraud or perjury in the bankruptcy case.'" *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999), citing William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 74.11 (1997). Important to the present case, intentional omissions from a debtor's schedules are also actionable under this provision. *See Patriot Fire Protection, Inc. v. Fuller (In re Fuller)*, 560 B.R. 881, 890-91 (Bankr. N.D. Ga. 2016).[12]

To establish proper grounds for denying a discharge under Section 727(a)(4)(A), the Plaintiff must show the following: (1) that the Debtor's oath or account was knowingly and

---

[12] A plaintiff objecting to discharge bears the burden of proof under a preponderance of the evidence standard. *See The Cadle Co. v. Taras (In re Taras)*, 2005 WL 6487202, *3 (Bankr. N.D. Ga. Aug. 19, 2005)(citations omitted).

fraudulently made; and (2) that it concern a material fact. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). Typically, omissions from a debtor's schedules or statement of financial affairs, otherwise attested as being true and correct, constitute a false oath, and actual fraudulent intent in such a case may be inferred from the totality of the circumstances surrounding the debtor's case. *See Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 123 (M.D. Fla. 1991); *see also Protos*, *supra*, 322 F.App'x at 933 (numerous misstatements can support finding of fraudulent intent); *Fuller, supra*, 560 B.R. at 891. In addition, reckless indifference to the truth is sufficient to prove fraudulent intent, and the cumulative effect of a demonstrated pattern of omissions might support an inference of an intent to deceive. *Taras, supra,* at *4. Courts analyze whether the alleged omissions are part of a scheme to keep assets for the debtor's benefit through their nondisclosure.

A false oath is considered material "if it concerns the discovery of assets, business dealings, or the existence and disposition of property." *Gebhardt v. Chesley (In re Chesley)*, 550 B.R. 882, 900 (Bankr. M.D. Fla. 2016)(citations omitted). In addition, even if the debtor can show that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174 (5th Cir. 1992)(finding that failure to list an interest in a corporation was material despite debtor's claim the interest had no value); *see also Chalik, supra,* 748 F.2d at 618 (rejecting debtor's contention that omitting twelve (12) corporations in which he had substantial interests was immaterial where the corporations were worthless);[13] *In re Mascolo*, 505 F.2d 274 (1st Cir. 1974)(finding that omission interfered with any investigation of

---

[13] In *Chalik, supra*, the court found that a debtor's omission of all references to his involvement in several corporations during the six (6) years preceding bankruptcy constituted the making of a false oath that is sufficient to bar his discharge even where the concealed information may not have revealed assets available to creditors.

11

debtor's financial condition, prior dealings, and disposition of his property). Requirements for complete disclosure underscore that the decision as to what is or is not relevant is not for the debtor to make. *Fuller, supra*, 560 B.R. at 891 (citations omitted). Instead, full disclosure is the order of the day.

Ordinarily, issues of intent in connection with an objection to discharge may not be resolved through summary judgment. *See Bank of North Georgia v. McDowell (In re McDowell)*, 497 B.R. 363, 373 (Bankr. N.D. Ga. 2013)(Drake, J.)(citing *United States v. Lenard (In re Lenard)*, 140 B.R. 550, 555 (D. Colo. 1992) for proposition that determination of Section 727 claim at summary judgment stage is problematic due to necessity of inquiry into debtor's state of mind or justification). A substantive pattern of concealment established by the undisputed facts, however, may support entry of summary judgment on a claim of false oath. *See Walton v. Williamson (In re Williamson)*, 2013 WL 441448, *5 (Bankr. S.D. Ga. Feb. 1, 2013); distinguishing *Looney v. Owens (In re Owens)*, 2006 WL 6589904, at *4 (Bankr. N.D. Ga. Feb. 3, 2006)(Drake, J.), citing *Lenard, supra*, 140 B.R. at 555.

In this case, the Plaintiff has presented sufficient evidence that the Debtor's sworn schedules and statement of financial affairs contain significant omissions.[14] First, with regard to the disclosure of income, the Debtor reported gross income of $0 for 2017, $205,000.00 for 2016, and $5,860.00 for 2015. *See* Statement of Financial Affairs, Question No. 4 (Main Case Docket No. 1)(pp. 8 – 9 of 51). Yet, during his 341 Meeting of Creditors, the Debtor testified that he had

---

[14] These documents were filed under oath. *See* Declaration About an Individual Debtor's Schedules (pages 15 and 40 of 51)(Main Case Docket No. 1); *see also* 11 U.S.C. § 521(a)(1)(A) and (B)(requiring the filing of certain lists, schedules, and statements); Fed.R.Bankr.P. 1008 (Verification of Petition and Accompanying Papers).

12

received cash transfers "right around a million three over four-and-a-half or five years of work" from Ms. Fitzgerald alone. *See* Section 341 Meeting, p. 14, lines 12-22.[15]

Similarly, the BEK checking account statements show deposits of $907,806.20 in 2015 and $394,744.36 in 2016, for a total of $1,302,550.56. *See* Spreadsheet of BEK Consulting Partners, LLC, Bank of America Checking Account--Analysis of Deposits 2015-2016, attached as Plaintiff's Exhibit 14 to the Memorandum. The Debtor also testified that BEK earnings would pass through to him as ordinary income. Consequently, his share of these sums, as fifty (50%) percent owner, would constitute gross income to him, and would substantially exceed the amount stated in the Statement of Financial Affairs. *See* Rule 2004 Examination, p. 36, line 12 – p. 37, line 7.

If income to the Debtor, these sums should have been reported in his Statement of Financial Affairs, even if received from an LLC (*see In re Sandifer*, 448 B.R. 382, 385 (Bankr. D. S.C. 2011)) and even if they constituted allegedly unlawful gains. *See James v. United States*, 366 U.S. 213, 218, 81 S.Ct. 1052, 1054-55, 6 L.Ed.2d 246 (1961).[16] In any event, however these substantial deposits came to be made, they raise questions regarding why they were made and whether they were income. Given the totality of the circumstances presented concerning alleged transactions and relationships, and the lack of any contrary explanation, it appears that the Debtor has not

---

[15] Neither the Exhibits attached to the Motion with the Plaintiff's Statement of Material Facts nor as attached to the Memorandum have been challenged by the Debtor as to either their authenticity or their content.

[16] Between March 2014 and August 2016, the TD Ameritrade records of Jacquolyn Fitzgerald reflect that the amount of $1.467 million was transferred from Ms. Fitzgerald's accounts to BEK. *See* Plaintiff's Statement of Material Facts, ¶ 16, Plaintiff's Exhibit 6 (attached thereto). Further, of this amount, $287,000.00 was transferred during the twelve months prior to the filing of this case, and $260,059.19 was transferred from the BEK checking account to the Debtor's personal checking account during this same time period. Plaintiff's Statement of Material Facts, ¶¶ 20-21, Plaintiff's Exhibits 6 (TD Ameritrade Records), 7 (Debtor's Bank Records)(February 4, 2016 through October 5, 2016), and 8 (BEK Consulting Partners LLC Bank Records)(March 1, 2016 through October 31, 2016), as attached to the Motion.

13

provided a proper accounting of, or made full disclosure regarding, such funds in his bankruptcy filing papers.

Next, the Debtor reported that he made no payment on any debt owed to an insider during the year before filing this bankruptcy case. Statement of Financial Affairs, Questions No. 7 & 8 (Main Case Docket No. 1)(p. 10 of 51). But, in sworn testimony the Debtor admitted owing his step-mother, Aline Cassady, between $200,000.00 and $500,000.00 from trading losses and that he made multiple payments to her in partial satisfaction of that debt. *See* Rule 2004 Examination, p. 29, line 7 – p. 30, line 11; p. 31, line 17 – p. 32, line 12; p. 35, line 19 – p. 36, line 6; and, p. 215, lines 3–10.[17]

Finally, the Debtor also failed to schedule a debt owed to Harry Klauber in the sum of $182,438.00 (*see* Schedule E/F, pp. 26-29 of 51), and omitted him from his verified Creditor Matrix (pp. 43 and 50-51 of 51). Only two (2) months before filing his bankruptcy petition, the Debtor had agreed in writing to "deliver" $182,438.00 to Mr. Klauber. *See* Affidavit of Harry Klauber, ¶¶ 32-35, attached to the Motion as Exhibit 12; Plaintiff's Statement of Material Facts, ¶¶ 28-31.

Denial of a discharge is an extraordinary remedy. A debtor is required, however, to "fully disclose all information relevant to the administration of the bankruptcy estate," and the truthfulness of a debtor's statements is critical "to the integrity of the bankruptcy process, and [its] proper operation…." *Free At Last Bail Bonds, Inc. v. Franklin-Graham (In re Franklin-Graham)*, 2008 WL 7842108, at *6-*7 (Bankr. N.D. Ga. April 17, 2008)(Diehl, J.)(citations omitted). Debtor's omissions of substantive aspects regarding his financial affairs and the failure to report

---

[17] The Debtor made four (4) payments to Ms. Cassady in the total amount of $44,500.00 in 2016, which he did not disclose. *See* Plaintiff's Statement of Material Facts, ¶¶ 32-33, 37-38, Plaintiff's Exhibit 11 (copies of checks), as attached to the Motion.

14

all his income and its sources, as well as certain payments made to an insider and the existence of a certain creditor establish a basis for denying his discharge under Section 727(a)(4).

As noted above, intent in such situations "may be inferred from circumstantial evidence" arising from the cumulative effect produced by a series of omissions. *Franklin-Graham, supra*, quoting *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 714 (Bankr. N.D. Ga. 1996)(Bihary, J.), cited by *Williamson, supra*, 2013 WL 441418 at *5. Such cumulative effect of omissions may be sufficient to establish the required elements of Section 727(a)(4) for purposes of summary judgment. *Franklin-Graham, supra*; *Williamson, supra*, at *5, citing *Hines v. Marchetti*, 436 B.R. 159, 169 (M.D. Ala. 2010), *aff'd*, 418 F.App'x 797 (11th Cir. 2011)(citations omitted).

The Debtor's multiple omissions and misstatements, viewed together, demonstrate his fraudulent intent for purposes of Section 727(a)(4), and consequently his discharge should be denied on this basis. The record shows the Debtor has offered an incomplete picture of his pre-bankruptcy financial situation, omitting important information about his relationship with BEK, about transfers to his stepmother, and about the existence of a significant creditor. The Debtor's failure to disclose these matters in his Schedules and Statement of Financial Affairs indicate such documents are not reflective of his true financial situation.

The inconsistencies between the Debtor's written statements in his bankruptcy filing papers and testimony during his 341 Meeting and Rule 2004 Examination, along with the other documentary evidence filed in this case, establish a demonstrated pattern of failing to provide the necessary honesty and transparency demanded by the bankruptcy process and the protections it affords. Based on the undisputed facts in evidence, the Debtor made false oaths and omitted

15

material information with intent to deceive, supporting a denial of discharge under Section 727(a)(4) as alleged in Count III.

*Conclusion*

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent that the Debtor's discharge in this case is **DENIED** pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4) and (a)(5). In view of this ruling, the remaining request for relief set forth in the Motion is moot.

Judgment will be entered contemporaneously herewith.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff, the Defendant-Debtor, and the Chapter 7 Trustee.

**[END OF DOCUMENT]**